THE RICHMOND & DANVILLE RAILROAD CO. *v.* WILLIAMS.

The evidence warranted the verdict, and the damages were not so excessive as to warrant the Supreme Court to interfere, the presiding judge having approved the finding.    *Judgment affirmed.*
October 19, 1891.

Railroads.    Damages.    Negligence.    Before Judge VAN EPPS.    City court of Atlanta.    March term, 1890.

Williams sued the railroad company for damages from personal injuries, and obtained a verdict for $2,350. Defendant's motion for a new trial on the grounds that the verdict was contrary to law and evidence, and excessive in amount, was overruled.

The evidence for plaintiff was to the following effect, in brief : He had been in defendant's employment at the time he was hurt a little over a month, as a train-hand. He was hurt between eleven and twelve o'clock at night. He was told by the conductor to couple some stationary cars to cars attached to an engine. The cars attached to the engine were coming back so fast he could not go in. When he signalled to have them stopped, they came back until they struck the stationary cars. After they struck, the slack left a space of two and a half or three feet between the cars, and then he gave a stand-still signal. He then went between the cars, and the draw-head of the standing car was higher than the one in the following car, necessitating a forced coupling, so that he had to change the pin out of the following car and put it in the draw-head of the standing car, as the coupling could not be made any other way. He turned around with his back towards the engine to put the pin and link into the standing car, and while shaking the pin down, the cars attached to the engine were moved, and as he made an effort to get out, his hand was caught between the dead blocks at the end of the car, above the draw-head. He had a pin and link in the hand that was hurt,

and was just about to put it in when he was struck; did not have the link in his hand when it was caught. He took his hand out as quickly as he could and made an effort to get out, but could not do it. He had given no signal to move, and the cars ought not to have been moved until he gave the signal. One of his fingers had to be amputated, another was broken, and it and another mashed. It was about five months before he could use his hand, and he cannot use it much now in heavy work. He cannot grip anything except with his thumb and forefinger, unless he gets a handful. He suffered great pain for about two months and a half, and still suffers. When he was hurt he was twenty-eight years old, was earning $1.25 a day and can earn now from fifty to seventy-five cents a day. Continuous work gives him "awful" pains in his hand every night; he cannot sleep with it, cannot rest at all with it after doing his work. At the time of the accident his stick was on the front of the engine. Whether it was one of the rules for brakemen to couple with sticks he did not know; they had sticks "because usually all trains toted sticks"; they would use the sticks on a heavy loaded car for putting on brakes, and he did not know it was against the rules to put on brakes with sticks. He was not instructed by the conductor that sticks were used for coupling, and the conductor never told him always to use his stick. The conductor said he (the conductor) gave the signal on which the engine came back. Plaintiff did not tell the engineer after he was hurt that he did not blame anybody but himself. After he was hurt and was carried on the engine, the engineer told him that the conductor gave him signal without signal to the train-hand, and that the conductor worked so fast in switching cars, he knew he (the engineer) could not handle that heavy engine, and that he (the engineer) would be blamed with it all. The conductor had, before plaintiff was injured,

v 88-2

seen plaintiff make couplings without a stick, and plaintiff always made couplings with his hand, the conductor never telling him to use a stick. Plaintiff saw couplings made by others, but never saw anybody use a stick in coupling cars.

The evidence for defendant was to this effect: Plaintiff gave a car-length signal which the conductor transferred; the engineer applied the air-brake; the cars stopped three feet from the other cars, and the engine stopped and the slack rolled ahead. Plaintiff said come ahead a little, and the conductor transferred the signal to the engine, and heard plaintiff hollo that he was mashed. The signals from the conductor were received by the fireman who was on the side of the engine from which the conductor could be seen. The signals given by the fireman to the engineer were, a car-length signal and then a stop-signal and a signal to come back. After he was hurt plaintiff was on the engine, and the engineer asked him if he had his stick, and plaintiff said, " No, it was on the engine," that he did not attach any blame to "any of you," that it was his own lookout about that. When the engineer asked him how he came to get hurt, he said he did not know exactly himself, but it could not be avoided. After plaintiff was injured the conductor made the coupling, and had to raise the link with his hand to make it. The link was in the bumper of the car attached to the engine. It had been for ten years the rule of the road to use sticks in coupling, and plaintiff drew a stick at defendant's office, furnished for that purpose. In coupling, a stick should be used instead of the hand to hold the link; that is what the stick is for ; it is long enough to prevent a man going between the cars. Defendant's employees were in the habit of using sticks. The conductor did not furnish plaintiff with a copy of the rules and did not suppose plaintiff could read them, nor did he

know that he had read the rule to plaintiff, but it was understood by the employees to use sticks, and the conductor, when plaintiff went to work for him about a month previous to the injury, told plaintiff not to couple without a stick. Plaintiff knew it was the rule of the road to couple with sticks, and the conductor so told him. The conductor did not carry a stick because it was not his business to couple cars, and made this coupling at his own risk. He had seen plaintiff make over a hundred couplings. The stick is too long to put on brakes with.

Jackson & Jackson, for plaintiff in error.
Bigby & Berry and John C. Reed, *contra.*